IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES W. ROBINSON, JR.,   *

 Plaintiff   *

   v   *   Civil Action No. DKC-16-1222

WEXFORD HEALTH SOURCES, INC.,   *
*et al.*,
  *

 Defendants
   ***

## **MEMORANDUM**

Pending is a motion to dismiss, or alternatively, for summary judgment filed by defendants Wexford Health Sources, Inc., ("Wexford"), Peggy Mahler, NP, Beverly McLaughlin, PA/NP, and Colin Ottey, M.D. ("Medical Defendants"). ECF No. 13.[1] Also pending is a motion to dismiss, or alternatively for summary judgment filed by defendant Alicia Cartwright ("Correctional Defendant").[2] ECF No. 14. Plaintiff has filed opposition responses (ECF Nos. 17 & 18) to which the medical defendants have replied. ECF No. 19. Plaintiff has also filed a motion for partial summary judgment. ECF No. 20. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' dispositive motions will be GRANTED and Plaintiff's motion DENIED.

---

[1] Citations are to the court's electronic docket except as to ECF No. 12, Ex 1, which is filed separately in paper format.

[2] The Clerk shall amend the docket to reflect the correct names of all defendants.

## I. Complaint Allegations

Plaintiff James W. Robinson, Jr., an inmate currently confined at Maryland Correctional Institution (MCI-J) in Jessup, Maryland, filed a complaint, a supplement, and an amended complaint alleging that the named medical defendants have been deliberately indifferent to his serious medical needs. ECF Nos. 1, 4 & 7. Additionally, he names Alicia Cartwright as a defendant but fails to specify how she violated his constitutional rights.

Specifically, Plaintiff states he has a growth on his left testicle for which he requested medical defendants provide him a sonogram. ECF No. 1, p. 3. He also alleged that he was denied pain medication and that his health care providers refused to address the situation. *Id*. Plaintiff alleged that he was being denied "any form of treatment for the growth on [his] left testicle." *Id*.

Plaintiff indicated in the supplement to his complaint that he was seen throughout 2014 to 2016 by Wexford employees, Buck, Martin and McLaughlin. ECF No. 4, p. 1. After review, the court further directed him to supplement the complaint. ECF No. 5. Plaintiff then filed an amended complaint naming Beverly McLaughlin, Peggy Mahler, Colin Ottey, and A. Cartwright as Defendants. ECF No. 7, p. 2. Plaintiff reiterated his claim that he was denied a sonogram for the growth on his left testicle and again noted that all pain medication after April 19, 2016 was denied to him. *Id*., p. 4. He claimed that he was denied any treatment for the growth on his testicle and that he had been given different diagnoses by different medical providers. *Id*. He provided no factual allegations as to Cartwright, the administrative remedy coordinator at Western Correctional Institution. *Id*.

## II. Defendants' Response

The medical defendants indicate that Plaintiff has a medical history positive for a testicular growth. ECF No. 13-3. They argue that Plaintiff has failed to plead properly a civil rights claim, they are entitled to immunity, and they demonstrate through medical records that Plaintiff has received constitutionally adequate medical care. *Id*.

Correctional Defendant Cartwright indicates, through declarations and documentary evidence, that Plaintiff's claim is unexhausted and that she was not deliberately indifferent to his serious medical needs. ECF No. 14.

On July 11, 2014, while housed at WCI, Plaintiff was evaluated by Robustiano Barrera, M.D., due to complaints that he noticed a "tender lump at the base of his left testicle." ECF No. 13-3, p. 2. Plaintiff has a history of throat cancer and expressed concerns to Dr. Barrera that the cancer returned. Barrera ordered blood work and advised that he may request a CT of the abdomen depending on the results of the lab work. *Id*., pp. 2-3. He was prescribed Naprosyn for pain relief and directed to return to Dr. Barrera in 2 weeks. *Id*., p. 3.

Plaintiff was seen by Beverly McLaughlin, R.N.P. on a sick call on August 27, 2014.[3] Plaintiff complained of left testicular pain and a lump which began one year ago, but which had shrunk in size. *Id*., p. 4. Examination revealed "a mass, left, the location is hard, with mobile texture." *Id*. He was prescribed Tylenol with Codeine. *Id*., p. 6. Blood work was again ordered and Plaintiff was directed to follow up with the provider regarding the results of the ordered lab work. *Id*.

---

[3] The computer was not working on the day of the examination and the note was entered on August 29, 2014. *Id*.

McLaughlin consulted with Plaintiff again on September 24, 2014, for follow-up and for unrelated issues regarding his compliance with his medically prescribed diet. *Id*., p. 6. At that time it was noted that Plaintiff's penile shaft was normal; no abnormal groin lymph nodes were palpable but the vas deferens was lumpy and tender. *Id*. McLaughlin recommended a testicular ultrasound. *Id*.

Plaintiff was next seen by McLaughlin on October 2, 2014, for a scheduled provider visit. *Id*., 8. Plaintiff complained of scrotum pain. He was advised that McLaughlin had placed a request for an ultrasound and was awaiting the decision from collegial. His pain medication was renewed for one month. *Id.,* p. 9.

On October 10, 2014, Peggy Mahler, RNP updated Plaintiff's chart with the results of his lab work. As a result of the blood work, fish oil capsules were prescribed, and he was directed to follow up in the chronic care clinic in one month for treatment of hyperlipidemia e.g. high cholesterol. *Id*.

Plaintiff was seen by Dr. Barrera on November 7, 2014, for a scheduled provider visit. *Id*., p. 11. Plaintiff complained of a scrotal lump on the left side. He indicated that it slowly increased in size and was tender and uncomfortable when he sat. Dr. Barrera indicated he would request a sonogram of the testicles. *Id*.

On November 25, 2014, Plaintiff was evaluated by Colin Ottey, M.D. during a scheduled visit. *Id*. p. 13. Plaintiff again reported testicular pain for over a year with no blood in the urine or discharge. Swelling in the scrotum occurred for about two months which then went down but a lump on the left testicle became larger with time. *Id*. Plaintiff reported pain while sitting, problems sleeping at night, and pain when pressure is applied. He reported no pain when

urinating. *Id*. Plaintiff was prescribed an antibiotic and his other medications, which did not include an analgesic, were continued . *Id*. He was directed to follow-up in two weeks. *Id*., p. 14.

Plaintiff was seen on November 29, 2014, by Terri Davis, P.A. due to his non-compliance with his medical diet. At that time, Plaintiff requested Tylenol for the testicular pain. Davis noted that Plaintiff had just been seen by a physician and no analgesic prescribed, as such, Davis prescribed Tylenol for 10 days, pending Plaintiff's follow up with the physician. *Id*., p. 15.

On December 2, 2014, Plaintiff was seen for follow-up with Dr. Barrera who noted that Plaintiff had been prescribed antibiotics for 15 days due to his complaints of testicular pain. Plaintiff reported that he still had some tenderness in the area but examination revealed no mass. *Id*., p. 17. Plaintiff was prescribed Tylenol with Codeine and provided scrotal support. *Id*., pp. 17-19.

Plaintiff was seen on December 26, 2014, February 6, 2015, April 10 and 15, 2015, May 1, 2015, July 10, 2015, and August 14, 2015, for health concerns unrelated to the testicular pain/lump. He did not express any concerns regarding testicular pain at those times. *Id*., pp. 20-21, 23-28. On August 25, 2015, Plaintiff's chart was updated to reflect that a targeted cell search was conducted and 4 pills of medication were found in Plaintiff's locker resulting in his being charged with hoarding medication. As a result, Plaintiff's prescriptions for Ultram and Baclofen were discontinued. *Id*., p. 31.

On September 3, 2015, Plaintiff was evaluated by Dr. Barrera due to complaints of bilateral testicular pain and "on and off" swelling. *Id*., p. 32. Plaintiff reported that the scrotal support was not helping. Examination revealed a cystic mass on Plaintiff's left testicle. Dr.

Barrera indicated that he would renew Plaintiff's prescription for Ultram and schedule a scrotal sonogram. *Id*. Dr. Barrera again examined Plaintiff on October 22, 2015. *Id*., p. 34. Plaintiff again complained of testicular pain. Examination revealed no testicular tenderness and the epididymis was not enlarged while the vas deferens was slightly swollen and tender. Dr. Barrera noted that he would continue to observe Plaintiff and he was directed to continue to take his medication as directed. *Id*. Plaintiff's pain medication was renewed on January 6, 2016. *Id*., pp. 36-37.

On February 27, 2016, Plaintiff was evaluated for unrelated medical concerns issues. *Id*., p. 38.

Plaintiff's chart was updated on April 21, 2016, by Peggy Mahler, NP who noted that Plaintiff's prescription for Ultram 50 mg. was not approved to treat his left testicular pain. *Id*., p. 41. It was recommended that instead he receive Mobic 7.5 mg. Mahler also indicated that scrotal support would be ordered. *Id*.

On May 26, 2016, plaintiff was seen by McLaughlin during a scheduled visit. He expressed that his intermittent testicular pain continued and that he was frustrated with the medical process and questioned how collegial review could "deny anything [when they] are not on site." *Id*., p. 42. Plaintiff was advised of the process and McLaughlin noted she would resubmit the request for an ultrasound. *Id*. He was advised to continue taking his medication, including Baclofen and Extra Strength Tylenol as prescribed. *Id*., p. 43.

On August 10, 2016, an ultrasound of Plaintiff's scrotum/testicles was performed. ECF No. 13-4. On August 29, 2016, after being transferred to MCI-J, Plaintiff was evaluated by Yonas Sisay, M.D. *Id*., p. 44. Plaintiff reported that he had suffered from "testicular area lumps

for a few years" and had previously been prescribed Ultram. Plaintiff was examined and the results of the ultrasound reviewed. The ultrasound showed bilateral hydrocele and right sided cysts. No evidence of a solid mass was shown.[4] Examination showed Plaintiffs' right scrotum was minimally enlarged. No tenderness or signs of erythema were noted. Dr. Sisay advised Plaintiff that narcotics were not an appropriate treatment for his condition. It was recommended that Plaintiff take Acetaminophen as Plaintiff reported that he did not like NSAIDs. *Id*. Dr. Sisay ordered a stool sample, acetaminophen for pain relief, and scrotal support, and directed Plaintiff follow up in the chronic care clinic in three months. *Id*., pp. 44-46.

On September 15, 2016, Plaintiff was seen during sick call due in part to his concerns that the Tylenol prescribed was insufficient to treat his testicular pain. He agreed to Naprosyn and same was prescribed. *Id*., pp. 47-48.

Dr. Sisay again examined Plaintiff on September 22, 2016. *Id.,* p. 49. Examination revealed minimal non-tender lumps on both scrotums. It was noted that Plaintiff wanted Ultram and Neurontin for his reported scrotal pain. Sisay again advised Plaintiff that Neurontin and Ultram were not indicated or appropriate to treat him. Sisay recommended an increase in Tylenol and discontinuing the Naprosyn. *Id*., p. 49.

Alicia Cartwright avers that she is a correctional officer at WCI. ECF No. 14-2, ¶ 1. She declares that she has no personal involvement in the provision of medical care to any inmate. *Id*. ¶ 3. She specifies that she is without authority to make decisions regarding an inmate's care or to direct medical personnel to take any specific action. *Id*. She avers that she did not interfere with, hinder, or delay Plaintiff's medical care. *Id*., ¶ 4.

---

[4] Plaintiff contends that the medical defendants cannot know that the cysts are benign as no follow-up appointment or culture of the cysts was taken. ECF No. 17, ¶ 3.

On April 1, 2015, Cartwright reviewed ARP WCI-0651-15, submitted by Plaintiff, indicating that there was a misdiagnosis of a growth on his left testicle and he had attempted to obtain proper medical treatment. *Id*. Cartwright dismissed the ARP, pending resubmission, with directions that Plaintiff specify the dates and providers he had seen and the issue he had with the treatment. Plaintiff did not resubmit the ARP. *Id*. There is no record at the headquarters' ARP/IGO Unit that Plaintiff ever filed an appeal of the ARP dismissal to headquarters. ECF No. 14-3, ¶ 2. Additionally, Plaintiff did not file any grievance with the Inmate Grievance Office regarding complaints of inadequate medical care. ECF No. 14-4, ¶ 3.

## III. Standard of Review

**A.     Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.     Motion for Summary Judgment**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not

9

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

**A.    Supervisory Liability**

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v.*

*Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Plaintiff has failed to point to any personal conduct by Wexford, in regard to the matters alleged in his complaint. Plaintiff's effort to hold this Defendant liable based on its supervisory role is unavailing. Wexford is entitled to dismissal.

**B.     Medical Claims**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

(there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

### 1. Correctional Defendant

The Fourth Circuit has identified two slightly different aspects of a correctional official's state of mind that must be shown in order to satisfy the subjective component in the context of medical care. First, actual knowledge of the risk of harm to the inmate is required. *Young v. Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer should have recognized it."). Beyond such knowledge, however, the officer must also have "recognized that his actions were

12

insufficient" to mitigate the risk of harm to the inmate arising from his medical needs. *Parrish*, 372 F.3d at 303 (emphasis added); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Here there is no evidence that Cartwright was aware that Plaintiff suffered from a serious medical need and/or that his needs were not being met by medical staff. Cartwright's sole involvement with Plaintiff in regard to his medical care was directing that he resubmit his ARP detailing his claims. He failed to comply with her request. Plaintiff indicates in his opposition to the dispositive motion that he had "several conversations" with Cartwright where Cartwright "request[ed] more time to address the situation." ECF No. 18, p. 1. Plaintiff indicates that by Cartwright's requesting more time to resolve his situation, "all chances for an appeal would become valid." *Id.* He indicates that Cartwright had "broad powers throughout the institution" and she could resolve many issues without any paper work. *Id.*, p. 2. Even if Cartwright agreed to make informal inquiries on his behalf regarding his medical care, there is absolutely nothing in the record to suggest that she interfered with the provision of medical care to Plaintiff, or had an actual knowledge of a risk of harm to Plaintiff and failed to act. She is entitled to summary judgment.

2. **Medical Defendants**

The undisputed record establishes that Plaintiff did not suffer a serious medical need for which he did not receive constitutionally adequate medical care. Indeed, the records filed establish that the medical defendants have treated Plaintiff's complaints and filed the appropriate requests for further diagnostic testing, provided him regular follow-up care, ordered laboratory tests, provided him medication for pain management, and medical devices. The medical defendants are therefore entitled to summary judgment.

In essence, for Plaintiff to prevail, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier* 896 F.2d at 851 (citation omitted) (*overruled in part on other grounds by Farmer, 511 U.S. at 837; aff'd in pertinent part by Sharpe v. S.C. Dep't of Corr.,* 621 Fed.Appx. 732 (Mem), (4th Cir. 2015). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id*. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra,* 429 U.S. at 106).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977). The record evidence indicates that Plaintiff's requests for treatment were considered and his needs addressed. The delays that have occurred do not appear to be deliberate, nor have they resulted in harm to Plaintiff. Plaintiff's numerous grievances are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766

F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970)). There are no exceptional circumstances alleged in this case.

It is unclear from the record before the court why Plaintiff's providers' requests for sonogram were not approved earlier. It is clear, however, that the delay in providing the sonogram did not result in any harm to Plaintiff as his course of treatment did not alter once the sonogram was obtained. Plaintiff has been treated conservatively and there does not appear to be any need for more aggressive treatment. Plaintiff's dissatisfaction with the delay in obtaining a sonogram and his disagreement with the analgesic medication prescribed to treat his discomfort amount to nothing more than a disagreement with the course of treatment prescribed. The medical defendants are entitled to summary judgment.[5]

### V. Conclusion

For the aforementioned reasons, Defendants' motions to dismiss, or in the alternative motions for summary judgment, construed as motions for summary judgment, will be granted.[6] Plaintiff's motion for partial summary judgment will be denied. A separate Order follows.

June 19, 2017                                      _____/s/_____
                                                   DEBORAH K. CHASANOW
                                                   United States District Judge

---

[5] Plaintiff indicates in his motion for partial summary judgment that on April 12, 2017, he was called to medical to consult with Dr. Sisay. At that time Dr. Sisay made a telephone call which lasted 4 minutes and which Dr. Sisay conducted in a foreign language. At the end of the call, Sisay advised Plaintiff that no further treatment for his unidentified "accelerating medical condition" would be administered. ECF No. 20. Plaintiff's motion will be denied. It is unclear whether the facts alleged in the motion pertain to the subject of this action or concern some other medical issue. Plaintiff does not identify how his medical condition has accelerated.

[6] In light of the foregoing the court need not address Defendants' claims of qualified immunity.